UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

NED F. ANDREE,

    Plaintiff,

v.

KENTWOOD PUBLIC SCHOOLS,

    Defendant.

_____/

Hon. Robert J. Jonker

Case No. 1:19-cv-00356-RJJ-PJG

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff counsel's Motion for Hearing and Order on Charging Lien. (ECF No. 87). The motion concerns the charging lien filed by Plaintiff's previous counsel, the Avanti Law Group, PLLC ("the Avanti firm"). (ECF No. 86). The Avanti firm is seeking the sum of $20,146.99 for services rendered in this case prior to the firm's withdrawal. (*Id.*, PageID.433). The Avanti firm has also filed a petition seeking a Court order that these fees be paid from the settlement proceeds in this case. (ECF No. 93). Plaintiff, acting in *pro per*, filed a response in which he challenges the amount of fees that should be paid. (ECF No. 97).[1]

---

[1] Although Plaintiff's current counsel filed the motion seeking Court action, she noted that she was not representing Plaintiff with respect to his fee dispute with former counsel. (*See* ECF No. 87, PageID.435).

For the reasons contained herein, the undersigned judicial officer recommends that the Avanti firm's charging lien be enforced, in part, in the amount of $15,146.99.

**Background**

In order to assess the reasonableness of the Avanti's firm's fee petition, some explication of the procedural background is warranted. Particular note will be made of any known actions or involvement of the Avanti firm in this case.

Plaintiff Ned Andree filed this Title VII action, in pro per, on May 6, 2019, claiming that Defendant engaged in racial discrimination. (ECF No. 1). Defendant answered the complaint on June 5, 2019. (ECF No. 10). A Rule 16 scheduling conference was held on July 8, 2019. (Minutes, ECF No. 16). The Case Management Order set an August 25, 2020, trial date and a discovery deadline of January 3, 2020. (ECF No. 19, PageID.42).

On July 26, 2019, Robert Alvarez and Agustin Henriquez, Jr., both of the Avanti firm, filed appearances on behalf of Mr. Andree. (Non-document docket entries). Three days later, counsel for both parties filed a stipulation to extend dates in the Case Management Order by thirty days (ECF No. 24), which the Court granted on July 31, 2019 (ECF No. 25). Mr. Alvarez served Plaintiff's Rule 26 initial disclosures, along with Plaintiff's responses to Defendant's interrogatories and document requests. (9/12/19 Proof of Service, ECF No. 26).

On October 7, 2019, Mr. Alvarez filed a motion for leave to file an amended complaint (ECF No. 29), with a supporting brief and a 46-page proposed amended complaint (ECF No. 30, 30-1). The motion was unopposed, and, after discussing the

matter with the parties during a January 9, 2020, status conference, the Court granted the motion the next day. (ECF No. 50). The Court also adjourned the trial date to November 17, 2020. (*Id.* at 241).

On November 11, 2019, Defendant filed a motion to compel discovery, seeking answers relating to Plaintiff's denial of Defendant's requests for admission 1 and 10. (ECF No. 34, 35). Mr. Alvarez filed a response to the motion on November 25, 2019, advising that Plaintiff had since supplemented his responses, and, accordingly, the motion to compel had become moot. (ECF 37). Mr. Alvarez noted that, in responding to Defendant's discovery requests, he had reviewed a total of approximately 2,800 pages of documents, seven audio recordings, and a video recording, which Mr. Andree had provided. (*Id.*, PageID.187, 190). After confirming with Defendant that the requested discovery had been produced, the Court dismissed the motion to compel. (ECF No. 42). The Court thereafter awarded Defendant $405.00 in attorney's fees relating to the motion, as Plaintiff's supplementation came after the filing of the motion, payable by Plaintiff's Counsel. (ECF No. 50, PageID.240).[2]

On March 20, 2020, the parties filed a stipulation seeking a thirty-day stay of the case, and a commensurate extension of the discovery and dispositive motion deadlines. (ECF No. 60). In that stipulation, counsel noted that, due to the Covid-19 pandemic, they were unable to conduct depositions. (*Id.*, PageID.380). The Court granted the stipulation three days later. (ECF No. 61). On May 1, 2020, the parties

---

[2] The Avanti firm has excluded from its present fee petition time expended responding to Defendant's motion to compel. (*See* ECF No. 94, PageID.450).

again jointly sought an extension of the discovery and dispositive motion deadlines – to July 3 and August 3, 2020, respectively – due to the Covid-19 pandemic. (ECF No. 62). The Court granted that request on May 6, 2020. (ECF No. 65).

On May 4, 2020, three days after the filing of the latter stipulation to extend discovery, Mr. Alvarez filed a motion on behalf of the Avanti firm to withdraw as counsel for Plaintiff. (ECF No. 63). Mr. Alvarez cited a "breakdown of the attorney client relationship," due to Plaintiff's "unwillingness and/or inability to continue to pay for any services provided" by the firm. (*Id.*, PageID.387). The Court conducted a hearing on this motion on June 8, 2020. (Minutes, ECF No. 69).

During that hearing, Mr. Andree and Mr. Alvarez essentially agreed on the following facts.[3] After the Avanti firm had expended approximately twenty hours of work on this case, Mr. Andree contacted Mr. Alvarez to arrange for further payment (having initially paid a retainer of $5,000). Mr. Alvarez advised Mr. Andree that he need not make another payment at that time. Due to an internal miscommunication within the Avanti firm, no invoices were sent to Mr. Andree over the following eight months. When the error was discovered, Mr. Alvarez contacted Mr. Andree in late February 2020, advising him that the Avanti firm needed payment in the amount of approximately $20,000. By that time, Mr. Andree had spent the money he had set aside to pay attorney's fees. Mr. Andree advised Mr. Alvarez that he intended to pay the legal bill, and that he would be taking out a line of credit on his home to pay it.

---

[3] The hearing was audio recorded, and the recording is available upon request.

Due, at least in part, to restrictions on business activities resulting from the Covid-19 pandemic, Mr. Andree's credit application was not timely processed. During this period, the Avanti firm sent Mr. Andree several emails reminding him that the firm needed payment. Finally, on April 29, 2020, Mr. Alvarez contacted Mr. Andree by email and advised him that he would withdraw as counsel if payment were not forthcoming. When payment was not received by May 4, 2020, Mr. Alvarez filed the motion to withdraw.

During the June 8, 2020, hearing, the Court pressed Mr. Andree and Mr. Alvarez on whether an arrangement could be made by which the Avanti firm could continue to represent Mr. Andree. The Court noted the difficulty of finding new counsel, and the lead time it would take for new counsel to get up to speed on the case. Based on their responses to the Court's inquiries, it was evident to the undersigned that the mutual misunderstandings and miscommunications that had contributed to the delinquency of the legal bill resulted in a mutual breakdown of trust between Mr. Andree and the Avanti firm. The Court granted the Avanti firm's motion to withdraw, and stayed the case thirty days to allow Plaintiff time to find new counsel. (ECF No. 70).

On July 17, 2020, Sarah Howard filed her appearance in this matter on behalf of Mr. Andree. (Non-document docket entry). A status conference was held that same day to discuss adjustments to the Case Management Order. (Minutes, ECF No. 74). An amended Case Management Order issued thereafter, setting a new trial date, and extending all deadlines. (ECF No. 75).

On October 23, 2020, the parties appeared before the undersigned judicial officer for a settlement conference. (Minutes, ECF No. 85). The parties reached a full settlement at that time, the terms of which remain confidential. Finalization of that settlement agreement is pending resolution of the Avanti firm's charging lien.

The Avanti firm filed its notice of charging lien on November 6, 2020. (ECF No. 86). Ms. Howard filed a motion to resolve the lien on November 9, 2020. (ECF No. 87). The Avanti firm filed a petition to enforce the charging lien, along with an accompanying brief, on December 21, 2020. (ECF No. 93, 94). Mr. Andree filed a response on December 31, 2020. (ECF No. 97). A hearing was conducted on January 4, 2021. (Amended Minutes, ECF No. 99). The Court then directed the interested parties to file supplemental briefs concerning the issue of the Court's discretion regarding the potential enforcement of the charging lien. (ECF No. 100). On January 11, 2021, Mr. Andree and the Avanti firm filed a joint stipulation acknowledging that the Court has the discretion to reduce the amount of the attorneys' charging lien. (ECF No. 101).

## Discussion

The Avanti firm seeks to enforce a charging lien in the amount of $20,146.99, which reflects the balance due based on a total of some 134 hours of work on the case. (ECF No. 94, PageID.448). The firm cites the retainer agreement by which Mr. Andree agreed to pay the firm at the rates charged, and under which the firm retained the right to collect fees incurred after termination of services. (*Id.*). Mr. Andree does not dispute that he owes the Avanti firm for its services. Instead, he asks the Court

6

to reduce the lien by an amount of $10,000. (ECF No. 97). Mr. Andree contends that Ms. Howard expended approximately $5,000 in billable hours familiarizing herself with the case after she took over from the Avanti firm, redundant work necessitated by Avanti firm's withdrawal. (*Id.*, PageID.488). He seeks a further reduction of $5,000 for unspecified "psychological harm" he contends the Avanti firm caused him.[4] (*Id.*).

The Avanti firm's charging lien is a matter governed by Michigan law. *Kysor Industrial Corp. v. D.M. Liquidating Co.*, 11 Mich. App. 438, 444 (1968). A "charging lien is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *George v. Sandor M. Gelman, P.C.*, 201 Mich. App. 474, 477 (1993) (citing *Kysor*, 11 Mich. App. at 444). "The attorneys' charging lien creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services." *George*, 201 Mich. App. At 477 (citing *Doxtader v. Siversten*, 183 Mich. App. 812, 815 (1990)).

This Court may exercise ancillary jurisdiction over the fee dispute between Mr. Andree and the Avanti firm, as the dispute relates to the federal cause of action pending before this Court. *See United States v. $1,264,000.00 in U.S. Currency*, 832 F. App'x 367, 371 (6th Cir. 2020) (citing *Exact Software N. Am., Inc. v. DeMoisey*, 718

---

[4] Mr. Andree offers no evidence to support his claim of psychological harm. While the Court can appreciate the general stress parties experience in the litigation process, and the likelihood that that stress would increase under these circumstances, it is an insufficient basis for an adjustment in fees. Moreover, as the Court has noted, there is mutual responsibility for the breakdown in the attorney-client relationship.

F.3d 535, 545 (6th Cir. 2013); *Kalyawongsa v. Moffett*, 105 F.3d 283, 287 (6th Cir. 1997)). "Resolution of related fee disputes is often required to provide a full and fair resolution of the litigation." *Kalyawongsa*, 105 F.3d at 287.

As this is a matter in equity, and not contract law, the terms of the retainer agreement do not control. This Court has discretion in deciding whether to enforce the charging lien and, if so, to what extent. *See Wipfler v. Warren*, 163 Mich. 189, 195 (1910) (acknowledging the court's authority to determine the extent of an attorney's charging lien). Inherent to that decision is a determination of what would be a reasonable fee for the services provided by the Avanti firm. *Cf. Laborers Pension Trust Fund—Detroit and Vicinity v. Interior Exterior Specialists Co.*, 824 F. Supp.2d 764, 775 (E.D. Mich. 2011) (Court noted that, although the attorney's lien was subordinate to another lien, "equity demands that [counsel] be awarded a reasonable attorney's fee.").

The Supreme Court has explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is the "lodestar method" of calculation. *See Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000); *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).

In determining a reasonable hourly rate, "[o]rdinarily, courts look to '[rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). In order to determine the local market rate, a court should rely on a combination of its own expertise and judgment. *Garber v. Shiner Enterprises, Inc.*, No. 1:06-cv-646, 2007 WL 4557857, *1 (W.D. Mich. Dec. 21, 2007) (citing *United States ex rel. Educ. Career Dev., Inc. v. Cent. Fla. Reg'l Workforce Dev. Bd., Inc.*, No. 6:04-cv-93, 2007 WL 1601747, *6 (M.D. Fla. June 1, 2007)). The Court may consider proof of rates charged in the community under similar circumstances, as well as opinion evidence of reasonable rates. *See Garber*, 2007 WL 4557857 at *1 (citing *Educ. Career Dev., Inc.*, 2007 WL 1601747 at *3).

The Avanti firm asks the Court to award hourly rates of $350.00 for Mr. Alvarez, $250.00 for the other attorneys, and $100.00 for paralegals. (ECF No. 94, PageID.447-48). The Court has reviewed the 2020 edition of the State Bar of Michigan's Economics of Law Practice in Michigan, which includes reported billing rates throughout Michigan. (*See* www.michbar.org/file/pmrc/articles/0000155.pdf). This is an acceptable source. *See Wells v. Corporate Accounts Receivable*, 683 F. Supp.2d 600, 603 (W.D. Mich. 2010) (citing *O'Connor v. Trans Union, LLC*, No. 05-cv-74498, 2008 WL 4910670, *6 (E.D. Mich. Nov. 13, 2008)). "District courts have relied on the State Bar of Michigan . . . Economics of Law Practice Survey to determine average billing rates in Michigan, and the Sixth Circuit has approved this

9

practice." *Wells*, 683 F. Supp.2d at 603 (citing *O'Connor*, 2008 WL 4910670, at *5 and *Lamar Advertising Co. v. Charter Twp. of Van Buren*, 178 F. App'x. 498, 501-02 (6th Cir. 2006)).

According to that survey, the mean hourly rate for attorneys in Grand Rapids is $312.00, and the mean hourly rate for plaintiff's attorneys practicing in the area of employment law is $345.00. (*See* www.michbar.org/file/pmrc/articles/0000155.pdf, at Tables 6 & 7 (last viewed 1/22/21)). Informed with this information, it is the undersigned's judgment that the requested hourly rates are reasonable, particularly with Mr. Alvarez's experience.[5]

The billing invoice provided indicates that the Avanti firm expended a total of $25,759.00 in billable hours on this case and incurred $912.99 in expenses. (ECF No. 94-2). Mr. Andree paid a retainer of $5,000.00 on July 12, 2019, and made another $1,000.00 payment on March 3, 2020, leaving a balance of $20,671.99. (*Id.*, PageID.471). As noted above, the balance is further reduced by a credit of $525.00 for time counsel expended responding to Defendant's successful motion to compel. This leaves an amount claimed of $20,146.99.

Many of the billing entries are too cryptic to allow for meaningful review. Accordingly, the undersigned will consider the time expended on a macro level. The Avanti firm expended some 134 hours on the case. (ECF No. 94, PageID.448). This included drafting a 46-page complaint, reviewing some 2,800 pages of documents, and

---

[5] Mr. Andree agreed to these rates at the time he signed the retainer agreement (*see* ECF No. 94-1, PageID.453-54), and he is not contesting them here.

some written discovery. Mr. Alverez acknowledged in the June 8, 2020, hearing that the case was "barely in its infancy," and that "discovery [was] about to begin in earnest."

With this in mind, it is the undersigned's judgment that the fees in question are somewhat excessive given the Avanti firm's limited involvement in this case. But there is another reason that warrants a reduction in the amount of fees sought. It is evident that there was a genuine misunderstanding between Mr. Andree and the Avanti firm, which led to the dissolution of their relationship. Fault, to the extent there is any to be found, is born by both parties. This misunderstanding, leading to the withdrawal of the Avanti firm, resulted in additional billable hours being expended by another attorney, Ms. Howard, in getting up to speed to take over the case. Presumably, Ms. Howard had to review the same materials Mr. Alvarez did, along with the amended complaint and other matters in the case file. Principles of equity suggest that some accommodation should be made for the redundancy of the work she performed.

Accordingly, it is the undersigned judicial officer's judgment that the Avanti firm's charging lien should be reduced by $5,000.00 to $15,146.99.

## Conclusion

For the reasons articulated herein, the undersigned recommends that the Court enforce the Avanti firm's equitable lien in the amount of $15,146.99. The undersigned further recommends that the Court order the amount of $15,146.99 be paid to the Avanti firm from the settlement proceeds.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

|  | Respectfully submitted, |
|---|---|
| Date: January 25, 2021 | /s/ Phillip J. Green<br>PHILLIP J. GREEN<br>United States Magistrate Judge |